## Patton *versus* Long.

1. Each county under the tax laws assesses and taxes all the lands found within its own boundaries.

2. It is the duty of an assessor finding land lying partly in his own county and partly in another to ascertain its character whether seated or unseated.

3. A tract lay in Centre county ; by division of the county, part was thrown into Clearfield and was sold as unseated for taxes. That taxes for the *whole* tract had been assessed and paid in Centre county, did not relieve the *part* in Clearfield from sale.

4. Ellis *v*: Hall, 7 Harris 292, distinguished.

March 27th 1871.    Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.    WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Clearfield county :* No. 84, to January Term 1869.

This was an ejectment commenced, December 22d 1865, by Benjamin F. Patton and Hays Hamilton against A. B. Long and others for a tract of 100 acres of land in Clearfield county, part of a survey of 406 acres surveyed in the name of William Wilson.

After the commencement of the suit the plaintiffs parted with their title ; the case was prosecuted by Patton, one of the plaintiffs, for mesne profits, notice of the claim having been duly given to the defendants.

The cause was tried, May 26th 1869, before Mayer, P. J.

The plaintiff gave in evidence a survey, September 27th 1799, to William Wilson for 406 acres in Huntingdon county. On the 13th of February 1800, Centre county was erected out of Huntingdon county, putting the whole survey into Centre county. On the 26th of March 1804, Clearfield county was erected out of parts of Centre and Lycoming counties, throwing into Clearfield county the part of the 406 acres in dispute. The title of William Wilson, through a number of intermediate conveyances, became vested in the plaintiff, February 26th 1864.

The defendants gave in evidence the assessments of Woodward township, Clearfield county, 1853, amongst others :—

[Patton v. Long.]

Dr. Alberti.

"100.   William Wilson.   $100."

"Treasurer's land-book.   1847 to 1855."

"Woodward township.   1852 and 1853.

"William Wilson.   100 acres," &c.

Deed, September 12th 1854, treasurer of Clearfield county, to A. K. Wright, for tract in name of William Wilson containing 100 acres.

"Triennial assessment 1859.

"100.   William Wilson.   $125."

"Treasurer's land-book."

"Taxes 1858 and 1859.   William Wilson."

June 12th 1860, deed, treasurer, to Jonathan Brynton, "100 as William Wilson tract."

The titles of Wright and Brynton were vested in Long, defendant, before commencement of this suit.

In rebuttal the plaintiff offered to prove the payment of taxes in Centre county of the whole tract for the years for which it was sold for taxes in Clearfield county; also to prove by Treziyulney, a surveyor, that at the instance of Dr. Alberti's agent he went on to the land with the agent, and found the tract in Woodward township, and that it was not the land in dispute.   Both offers were rejected, and bills of exception sealed.

He then gave evidence by the assessor of Woodward township in 1853, that the assessment to Alberti was not in his handwriting.   Goodlander, clerk of the commissioners, testified that the entry to Alberti in the duplicate of 1853 was not in the handwriting of himself nor of either of the commissioners.

The court amongst other things said to the jury: * * *  "It is however contended by the plaintiffs that as they have shown by the assessor of Woodward township for the year 1853, that the entry of the valuation of the 100 acres of the William Wilson tract con tained in the assessment book is not in his handwriting, and was made without his knowledge and consent; and that the entry is not in the handwriting of the commissioners or their clerk; there is not sufficient evidence to support the sale, and we are asked to instruct you that the title acquired by A. K. Wright is void. We cannot so instruct you, but say to you [that assuming that the valuation contained in the assessment book of 1853 was made without authority; there is sufficient evidence contained in the unseated land-book of the *commissioners* of an assessment of taxes for the year 1852 to support the sale, and pass a good title to the purchaser."] * * * ["Under the whole evidence in the cause we instruct you to find for the defendants."]

The verdict was for the defendants.

The plaintiff took out a writ of error.   He assigned his errors as follows:—

[Patton *v.* Long.]

1. " Rejecting the evidence of the assessment and payment of taxes on the whole tract in Centre county as set forth in the first bill of exceptions."

2. " Rejecting the evidence as to the identity of the land sold for the taxes as set forth in the second bill of exceptions."

3 and 4. The parts of the charge in brackets, which were set out in the assignments *totidem verbis.*

*H. B. Swope,* for plaintiff in error, cited Gratz *v.* Hoover, 4 Harris 239 ; Ellis *v.* Hall, 7 Id. 297 ; Stewart *v.* Trevor, 6 P. F. Smith 382 ; Russell *v.* Werntz, 12 Harris 337 ; McReynolds *v.* Longenberger, 7 P. F. Smith 13.

*J. B. McEnally,* for defendants in error, cited Coxe *v.* Gibson, 3 Casey 160 ; Burd *v.* Patterson, 10 Harris 219 ; Caldwell *v.* Walters, Id. 378 ; Wells *v.* Smyth, 5 P. F. Smith 162 ; Crum *v.* Burke, 1 Casey 381 ; Miller *v.* Hale, 2 Id. 435 ; Laird *v.* Hiester, 12 Harris 462 ; Hubley *v.* Keyser, 2 Penna. R. 496 ; Fager *v.* Campbell, 5 Watts 287 ; Howard Express Co. *v.* Henry Wile, 14 P. F. Smith 201.

The opinion of the court was delivered, May 8th 1871, by

AGNEW, J.—The entire tract surveyed in the name of William Wilson lay in Centre county until the erection of Clearfield county in the year 1804, when about 80 or 90 acres were cut off by the county line. This part was sold for taxes in Clearfield county in the years 1854, 1860 and 1864, and deeds were made by the treasurer, under which the defendants claim title. The plaintiff, in order to avoid these sales, offered to show the assessment and payment of taxes for the entire tract in the county of Centre down to the bringing of this suit. The rejection of this offer is the principal error complained of. It is contended that the chief part of the land being in Centre county, the plaintiff was justified in returning and paying taxes for the whole tract in that county. It is not pretended that there was an arrangement between the commissioners of these counties for the assessment and taxation of border lands by entire tracts. The question is therefore simply one of jurisdiction, and the proposition of the plaintiff really was, that Clearfield county had no jurisdiction to assess and tax this land. We know of no law for the taxation of unseated border lands by entireties in adjoining counties, and certainly there is no such general custom having the force of law. Each county in the Commonwealth has assumed, under the tax laws, to assess and tax all the lands found within its own boundaries. It required an Act of Assembly to cause *seated* lands to be assessed in the township in which the mansion-house is situate, where the land is divided by a township line : Act 11th July 1842, § 59, Pamph. L. 331. But the plaintiff in error refers to

[Patton v. Long.]

the case of Ellis v. Hall, 7 Harris 292, as containing a principle which should govern this case. It was there held that the character of a tract as *seated* was not changed by the running of a new county line which threw a portion of the woodland into the new county, and that the woodland thus cut off could not be assessed as *unseated*. A *tract* of land, it was said, is a term well understood, and a law to create a new county cannot be construed to effect a different purpose, and therefore will not change the character of the land for the purpose of taxation. But it was not decided, and not even said in that case, that the entire tract *must* continue to be assessed in the old county. The rights of the owner of the land will not be affected by the running of the new county line, and his land converted into separate tracts, one seated and the other unseated. But certainly each county may assess and tax so much of his land as lies within its own boundary, but in that case as seated land. It is the duty of the assessor, finding land lying partly in his own and partly in another county, to ascertain its true character before he assesses it. In the present case there was no evidence showing that the land was seated, and consequently the several parts of it would be assessed as unseated. We see no error in the rejection of the offer.

Neither the 1st nor the 2d error has been assigned in conformity to rule, and we need not to have noticed the 1st: Burkholder v. Stahl, 8 P. F. Smith 375. But as it contained the vital point of the case we have discussed it. We discover no injurious error in the 3d and 4th assignments. The error of the court in mistaking the treasurer's book for the commissioners' of 1852 was harmless; for there is quite enough in the sales of 1860 and 1864 to support the defendant's title.

The judgment is therefore affirmed.